And for appellant, we have Ms. Bollinger. Yes, Beth Bollinger, Your Honor, on behalf of Dr. Holden, who is here in the courtroom and in the audience. I wanted to let the court know that. I am going to try to reserve three minutes to let you know that as well. This is a large case. It was an eight-day trial. It's dealing with healthcare fraud, and there are several issues that I've briefed. I'm going to try to focus primarily on three issues, whether count 41 was a proper count, whether the global tech Supreme Court decision requires the court to reach a different conclusion with regard to instructing on reckless disregard, and then whether the inexorably intertwined rule, which is a Ninth Circuit rule, was improperly applied to the facts of this case. I'm not going to be arguing that inexorably intertwined should be disregarded by this panel, because I do think that that's a Ninth Circuit precedent that would have to go to the in-bank court, unless you have questions for me about that. Factually, this is, like I said, it was an eight-day trial. It was an indictment that spanned from 2004 through 2010 in its introductory language, but as to its actual specific counts, it was very specifically count-by-count, day-by-day, the way that the schemes were alleged were by incident per incident. They were grouped, different schemes were grouped together, but even the incidents themselves were this day versus that day, and the charges themselves, the counts themselves were 2006 and then partly into 2007 on concrete specific days, and then there were a few days of counts for 2010. And that's significant in this case. Schemes to defraud can be pled in a lot of different ways, but in this case, they were pled by, as each incident was its own individual scheme. There was also, factually, there was an, and this comes up for the inexorably intertwined part of the argument, there was a series of facts, the most important being that Dr. Holden and his office were alleged to have created records for an audit that was upcoming. Audits were not part of the indictment. They were never pled. The government had been on record saying there was no 404B evidence, and there was this evidence that was coming in that was basically about whether Dr. Holden and his office were manufacturing and whiting out dates of when certain records were created because the dates were all showing up as being created right before the audit. And there were six witnesses that came in on this. The government wanted to rebuttal witness. The court had said, please tie this up. Does this go to a specific count? And it never did tie up. And that was also very significant because the evidence permeated the trial. And Judge Whaley actually said in his ruling, he did find that it was inexorably intertwined, which we challenged, but he said, if he's wrong on the application, that there was not harmless error and that it should be a new trial. This come in in the government's case in chief? Yes, throughout the government's case in chief. The defense objected to it. The objections kind of went over a few pages in the transcript, as you would see, but ultimately Judge Whaley was saying, you are going to tie this up to a count within the indictment. And the prosecution said, yes, we are. And then ultimately it came out, no, I guess it, and in fact, when the judge raised this at the end of the case, he said, you never tied this up to a particular count. And the government said, well, Your Honor, you could give a 404B instruction because we brought it in for intent and knowledge. But the district court ultimately determined that it made the inextricably intertwined standard. So what's the effect on us that the district court said, well, and if I didn't do that, then I would have concerns that it's not harmless error. How does that affect us as sitting as an appellate court? Your Honor, I think this court gives deference to the trial court when it comes to what a trial court does in terms of ordering motions for new trial, whether he orders the motion for new trial, whether he denies the motion for new trial, there's a certain amount of deference because he's the one who was looking at the credibility. He was the one who tries the case. So Judge Whaley, to his credit, while he was not agreeing with Dr. Holden's point of view with whether the evidence could be entered as inextricably intertwined, he was very clear that if he was wrong in that interpretation, that he would order a new trial. But he didn't issue an order. He didn't really make a formal ruling. So is there anything there for us to defer to other than we say, well, the district court's on the front line, so maybe he has a better view. I mean, is there anything that would preclude us from saying that any error was harmless? I don't think it would be precluded. I think it's more the general concept that you give that kind of deference to the trial court. And he did make an effort. For instance, if he had granted the new trial, and that was, I think that could be on appeal, I'm sorry, that the court would do the same thing if there was an error but if he were making a statement about what he would do in the alternative, I think this court, and I think that's why he told the court. And he actually says, this court will make, the Court of Appeals will make its own decision. But, and we go through the inextricably intertwined. It was an unusual case because the judge said, is this gonna be tied up to a count? It wasn't tied up to a count. He said, if it's not gonna be inextricably intertwined, I have to order a new trial. Now he went through in his order, denying the motion for a new trial, being very specific about why he thought it could have been considered part of the evidence. But as we note in United States versus King, and I have the site here, United States versus King is a little bit, is more restrictive than that. It's not whether it could have been relevant or it could have come in. It's whether it had to in order to complete the story. It is whether the government, the prosecution couldn't have gone forth without that evidence. And so at a minimum, I think that we would need to remand to the trial court to make a determination under the light of United States versus King, which was not part of his analysis. The proof, and the government offered proof, did they not, in this case, that your client miscoded, deliberately miscoded. For example, someone would come in for a toenail trim and it would get coded as infected ingrown toenail. That was one of their theories for one of the schemes. And they offered proof of that. They, yes, I would say that they offered proof of that. So it's not beyond the realm of reason that a doctoring up an audit would be intertwined with the charges and the indictment and the proof the government offered, right? I disagree. I think that, well, I think that the audit part, first of all, the audit was not listed at all about in the indictment. There was nothing about the audit being any part of the scheme. And then the other part is that nothing in the audit, the audit that we're talking about, the main audit that we're talking about was the one that happened in the summer of 2006. There's no allegation that it relates to any of the counts that are in the indictment. And there's no allegation of wrongdoing in that particular audit. There's no allegation that they were doing anything other than getting their documents ready for an audit. So as I read the record, the audit issue was they were taking the handwritten notes and putting them into the electronic chart and then changing the dates so that it would look like the notes had been entered electronically contemporaneously. And I actually think they just whited out the date because the date was showing up as being made six months or three months or whatever it was, that they were all being made on the same date. So I think what they did is they whited out the date. They were trying to indicate that the notes had been put into electronic format contemporaneously with the work or around the same time. Is that correct? They were trying, so the allegation in the evidence was that they were wanting to camouflage the fact that they were done all at the same time. That the notes were put into the database. But was there an allegation that the notes had been created after the fact or much later to try and show some service that wasn't given? Was there any allegation of that? My understanding of the evidence is no, that the allegation was in fact that they were trying to work from what's called the super bills, which was the bigger, the summaries that would be used contemporaneously with the visit from the patient. And that they were, and between, and Dr. Morton, who was one of the ones that was filling in the evidence, said, testified that he was going off the super bills and off of Dr. Holden's recollection. So, and the idea was to get it right. So that was the testimony, and it was not connected to any of the counts. So there was no allegation about changing the information about the type of service that was offered, the sorts of issues that came up in the actual charges against Dr. Holden. Is that correct? That's my understanding. And I'm specifically referring to the 2006 audit. And that was a state agency audit? That was for L&I Labor and Industries. It was a Labor and Industries audit, but even there. So here you have, even if there was some of the evidence maybe could have come in and extrably intertwined since there wasn't the, the government was presenting no 404B evidence. It was reams. It just was on and on. There were six witnesses. They had the L&I officer say, well, had I known, I would have inspected them more closely. There was, they had their own, their own agent testified. They had both Dr. Lee and Dr. Morton testify. They had two of the staff members. They had a rebuttal witness that they wanted. And that's why Judge Whaley said, if there was an error here in how it was interpreted, we need to do a new, a new trial. And I'd point the court to different quotations that I've got and I page them. And now I don't have the page numbers. Pages like 22, 23, 24, there are quotes from Judge Whaley as to his concerns about that. And then in, in the order for denying the new trial at page, which is ER 999, he also discussed that, you know, he wanted to be clear that he had expressed concern about, about this evidence and whether it was giving the impression that not keeping contemporaneous records was somehow making it look like there was, that that is a crime. Did Dr. Holden take the stand? He did. And testified? He did. Couldn't this 404B evidence have been used in cross? Your Honor, I would say, first of all, 404B, there was no weighing of, there was no 404B, there was no 403, 403 analysis, there was no four. I use that as sort of a descriptive title. The evidence regarding the audit. Which the judge found was inexorably intertwined. Fair game for cross-examination. I think that there, it depend, it would have depended on how the trial went. I mean, I think that it's possible that, I mean, it certainly did become a subject and it was something. What was the heart of his testimony in terms of defending the charges in the indictment? His, it's for, so Dr. That he didn't miscode things? Yes. So there were several different schemes, which is one of the interesting things about this case. And his defense was, depended on the scheme that was alleged. One of his defenses was really his own health. He was, he had, was, he was depressed. He was, he was reclusive. He wasn't necessarily out and about. For instance, with Dr. Lee, for instance. In other words, he's saying in summary, I didn't intentionally miscode these things so that the government, Medicare, Medicare, Washington State would reimburse me for a procedure that is clearly not covered. Right. That was the sort of the essence of what he said, right? I would say, so for instance, yes. I would say for Dr. Lee, for instance, Dr. Lee said he knew that, you know, I was doing these procedures. I couldn't have done them in the two or three hour time span. And Dr. DeFolden's defense to that was, I used to do those procedures at that nursing home. I know how long they take. They take a while. And I was locked up in my office and I wasn't seeing when Dr. Lee would return. So that was an example of why he kept, he said, you're not charging enough for these. I know they take longer. And that he and Dr. Lee would go, would have these battles. But, and that actually goes to the argument with regard to recklessness too, and in terms of the prejudice. So there, there is, it did make it appear that he was, if he was, if he was doing all this, the whiteout, and that was so important to the government that they would have all these witnesses. It ultimately, I think impacts, and is why we don't have a kitchen sink mentality when it comes to, even with the Ninth Circuit's interpretation of inextricably intertwined. Specifically, given the amount of evidence that the government had on the actual schemes that were charged, what was the prejudice to Dr. Holden of introducing this audit evidence? Your Honor, I would say that the prejudice, first of all, the trial court felt that the case was close enough. I understand what the district court said, but the question is, what argument would you make to us as to why it's prejudicial, not harmful? I think it challenged his credibility. I think that all the whiteout evidence and what he was doing or why he was doing it challenged the credibility. It may have come in on some truncated way, but it was so, it was, because when it comes to intent in these kinds of cases, it really, if the defendant takes the stand, whether he's believed or not believed is very important. And whether, and the judging by the jury. For instance, with the counts one through six, counts one and two, he was acquitted. Counts three through six, he said, I also gave those services. And Dr. Moore, and the hand, and the patient said that he saw Dr. Holden and Dr. Lee. The only, it was in Dr. Morton's handwriting, and the jury went with Dr. Morton's handwriting because, I mean, I think that there were, they were challenging what he did in terms of records or what his recollection was. Before you go all through your time. I know. There's a theory issue I'd like you to address. Yes. When can a healthcare fraud be viewed as a single continuing offense? It wasn't our case. I think that it can be pled to be more of a larger scheme than what we had. We actually argue, I think, even if it were a continuing offense or not, that when you look at AWAD, this is down to count 41, this is sort of the argument we made with count 41, which was the closest to a broader scheme, that AWAD tells, AWAD, which is a Ninth Circuit decision, says that there should be an analogy to bank fraud, and bank fraud is when the bill is submitted. And so, to the extent that there is a long, the scheme can be a longer period of time, it would be, even then, it's when the, we would argue that it was when the claim is submitted. And I have, I'm really running out of time. On count 41, I just want to say really quickly, there were two issues. One is, and they kind of come up in the reply, ultimately. They come up in the opening brief, but they also surface in the reply. And one is that the government indicated that the submission of the bill in count 42 was in 2007, but they pled that the scheme was all done on January 6th, 2006. They said the date of service was January 2006. And that's what they pled in the indictment. But then, that wouldn't be the completion of the scheme, so it wasn't at least until the claims were submitted for payment, which I understand was in February 2007. Am I misunderstanding the timeline? You're not misunderstanding the timeline, and that's why the count 42 never should have survived. It didn't plead the offense. February 2007 was within the statute of limitations, but what you're saying is that the indictment didn't say that the claims were submitted for payment in February 2007. Is that the gist of your argument? What I'm saying, that January, if they claim that January 6th, 2006 is when the crime was committed, and now they're saying it has to be when it was submitted, that's not honor about. Honor about, that's a year later. Honor about is day here, day there, and we put that in the reply as a case. And I'm not at all getting to one of my favorite arguments, which is the argument about reckless disregard. And I would encourage the court to look at global tech as a new intervening matter for purposes of whether Deering continues to be good law. And I did the historical analysis as well, which I was very careful with. And I'll reserve the rest of my time. Thank you. Good morning. May it please the court, counsel. Your honors, first I'd like to begin with, the government submitted a Rule 28J letter yesterday about a panel opinion that was issued on Thursday of last week. And I just wanted to ensure that the court had an opportunity to receive that Rule 28J letter. Okay, thank you. I'd like to pick up where defense counsel left off and focus my time on the two issues that she had identified, which is count 41, revised count 41, as well as the inextricably intertwined evidence, unless the court would like me to focus my time elsewhere. With respect to the courts, the court did not err when it declined to dismiss original count 42, because it was both charged within five years of when the false claim was submitted to Medicare, as well as within five years of when the defendant received the payment from Medicare, the proceeds of the scheme to defraud. So it doesn't matter which trigger one chooses, it's within the statute. That's correct, your honor. In this case, both events, under both defendant's theory, that it is the time in which the false claim is submitted to Medicare, which here happened in February 2007, that was within five years of when the indictment was brought as well as when the payment was received by the defendant from Medicare. So under both the government's theory and the defense theory, the facts show that those operable events occurred within five years of when the government brought the indictment. The opposing counsel says the indictment should state the date when the claims were submitted for payment as being the last act of the scheme. Is that correct? Your honor, the government does not believe so. The indictment was consistent in that for each of the charges brought, the government listed the date of the service provided to the patient. The government didn't list the date in which the false claim was submitted to Medicare. It listed for this date of service, false information was provided to Medicare. And so that's the style of the indictment and it's the government's belief, especially based on the Ninth Circuit's precedent in Najor, that it's not necessary for the government to list in the indictment the last act in furtherance of the fraud that would trigger the statute of limitations. In fact, in Najor, the court considered almost the exact same issue here, except for within the context of a bank fraud statute. In that case, the defendant argued that his providing false leases to a bank on which a bank approved a loan was the false statement submitted to the bank. At that point, the scheme to execute the bank fraud had been completed and that date, the submission of the false information to the bank, should trigger the statute of limitations running time. And in fact, the Ninth Circuit specifically rejected that argument and found that there were later acts that were in furtherance of the fraud, but not necessarily the submission of a false statement from which the statute of limitations was triggered. And in fact, that was the defendant then signing a promissory note with the bank. So not necessarily a false statement submitted to the bank, but an act that was in furtherance of the fraud, not the charged execution, the submission of the false leases, that triggered the statute of limitations. So the Ninth Circuit in Najor rejected this very argument that the scheme is complete when the false information is provided. And based on this court's precedent in Awad, which says that the healthcare fraud statute, section 1347, should be treated as a continuing offense, should be treated similarly to the bank fraud statute because of the similar structure of the statutes. The government believes the same analysis should apply to 1347 as the court did for 1344 in Najor. Our cases say that each of these series of acts, each scheme, submitting a false claim, getting the payment, can be charged separately. What case says that they can all be lumped together? Your Honor, that's, the district court, I believe,  that a scheme can be charged with many acts together or can be charged with each individual, each individual execution of the scheme. Here, Your Honor, in this case, as the government has mentioned, the fraudulent payment was submitted within the statute of limitations period. And that factual issue has never been contested. If you go back to the record at the motion to dismiss, no one has ever contested the fact that the fraudulent payment was submitted within the five years as well as the payment was received. You mean the claim, the claim was submitted? Yes, I apologize, Your Honor. The fraudulent claim was submitted in February of 2007. So all of the services happened on January 6th, 2006 and all of the claims were submitted in February 2007? No, Your Honor. The claims are submitted per patient. And so several patients were seen on January 6th. The only one that was submitted in February of 2007 was count 40, it was then original count 42, patient LB. All the others were submitted before the statute of limitations date as well as paid before the statute of limitations date, which is why the court dismissed the other 15 counts was for those individual, each individual submission of claim and payment had occurred prior to the statute of limitations date. Is Hickman the best case for saying that if you have a number of acts, each of which is complete, but which took place before the statute of limitations date, but one act of a similar nature, the last act was within the statute of limitations, you can group them all together for purposes of charging. Is Hickman the best case for that? Yeah, I think that in King from the Ninth Circuit, Your Honor, where King decides that under the bank fraud context,  should be construed similarly in a WAD. In King, the court held that under a bank fraud scheme, the government can charge an entire scheme and only one execution or can charge them individually. So I think King is the best proposition for that. And then Your Honor, with respect to the notice, so once the court dismissed the 15 counts and kept original count 41, the government then took those claims as the court noted and lumped those together in one scheme and charged one execution related to the scheme as a whole. And throughout the course of the proceedings, the defendant has argued that he wasn't on notice of what that count charged. And I think it's important that the court recognize that the government had identified that both by the charging language, which stated in, so this is revised count 41. The government stated in that, that it was limited specifically to the dates of service that were provided on January 6th, 2006, at Garden Village. So by the very language in the charge, it indicated what it was limiting it to. Second, the defendant never asked for a bill of particulars to try to determine if the government intended to prove up more than that. And in fact, there was motion practice to dismiss this count. And in the government's papers, it specifically said that was the government's intent, is it combined those counts together. And third, the court should look to what did the government prove up at trial? And in fact, what the government did is prove up the exact counts that had been in the original indictment, counts 41 to 56. And that can be seen by comparing those counts in the initial indictment, which is on the record, excerpts of record 12 and 13, with the billing data that the government used for revised count 41, which was government's exhibit 45 at the SER 828 and 829. And if you do a comparison of the original indictment and the billing data, you can see that those patient initials run all the way through. So what the government proved up at trial was exactly consistent with what it had initially charged. You wanna talk a little bit about the audit information and the concern of the district court about tying it up at the end of things in his apparent, the district judge's apparent conclusion that you did not. Your Honor, the district court concluded that the government did tie up the evidence, that it was inextricably intertwined with the charge scheme. And before we start, I want to clarify what the audit evidence was based on some questions that Judge Ikuda had asked. The audit evidence was, it was a mix of evidence. It was an allegation and testimony by Dr. Lee that doctors were asked to add information to chart notes to make them match what had billed for services that had not been performed. It was asking to draft chart notes that did not exist in order to support what had been billed. It was asking, so it was a mix of manufacturing charts whole cloth. It was a mix of adding stuff, adding procedures to chart notes that did exist to justify what had been billed. And it was also taking some paper notes and transferring them to the electronic system. So it- It didn't charge any of this. Correct, Your Honor. I just wanted to clarify one point of Judge Ikuda's and then I will come back to Your Honor's question is, Judge Ikuda asked if there were examples where the, where there were no chart notes and they were made up. And that's actually the example in the government's brief at SER 857 for October 4th, 2005. There is a date for a chart note, but there's absolutely no notes made whatsoever. And then the electronic record was generated to give chart notes that did not exist before that. So that those examples do exist in the record and it's cited in the government's brief. Turning to your question, Judge Hawkins, the government charged a scheme to defraud that occurred from 2004 to 2010 with the specific examples in 2006, 2007, and 2010. A significant portion of the government's case relied on the documentation, the documentation that existed. And one of the government's theories was the defendant would see a patient, would not do any chart note, bill for whatever he wanted, and then do a super bill, which would just tell the billers, this is the procedure code you're gonna bill for with no chart note. All of that's charged in the indictment. Does the indictment charge anything with respect to these audits? Your Honor, the indictment does not mention the audit. So the short answer to my question is no. It does not mention the audit. The reason this is inextricably intertwined is because it's intertwined with the way in which the government charged these cases, had its theory of the case. The first is that the defendant would bill for services for which he had not provided to patients and not done any chart notes. And the way in which this would survive is he would just make it up when it came time to face the audits. And this was the precise theory about the failure to document the services that were provided on counts one and two of the government where there was only a super bill, there was no chart note. It was also the government's theory in counts 14 through 40 for patient JL that there were no chart notes to justify that microvests had in fact been billed when in fact that's the billing information. So the way in which the scheme was done is similar to what was going on in the audits that he had this issue where we have a problem, we have no chart notes, but I've already billed and received payments from labor and industries for this very conduct. So it's the same conduct. Why not charge it in the indictment? Your Honor, the government under the theories of the Ninth Circuit is not required to charge 100 count indictments with respect to these because these rules exist about inextricably intertwined. Here also, Your Honor, this is a case where it was the defendant's same medical practice in concert with the exact same employees as the charged counts. It happened in temporal proximity. The manufacturing of the chart notes for the labor and industries audit occurred three weeks before counts one and two. So it's occurring in the same timeframe and in temporal proximity to the charged counts in the scheme. Let's suppose that while all of this was happening, Dr. Holden submitted a false auto insurance claim to State Farm and it would be demonstrable from the evidence submitted in connection with the claim that it was false, that he had described something which never occurred in order to get coverage and recovery from State Farm. Could you have used that? And Your Honor, I guess I need to ask for clarification. Are you talking about like a State Farm policy and his personal? At the same time all of this was going on, he's got an automobile policy. Automobile. And he is in a fender bender and he describes it as a head-on crash at 60 miles an hour with severe personal injuries and he describes them, all of which is made up of whole cloth. And Your Honor, I think that would be classic 404B evidence because it's not tied to the scheme because it doesn't involve the same employees. It isn't committed in the same way the scheme is committed. It wasn't done as part of his healthcare practice. It wasn't done in furtherance of this scheme to defraud Medicare and receive money to which he wasn't entitled. And there's two other reasons that the government believes that this information was inextricably intertwined. And it's also, this was an effort by the defendant to conceal his unlawful activity in terms of he was trying to hide from auditors that, in fact, he had billed for procedures that hadn't been performed. That's the very essence of the scheme. The only way he gets to keep this money is by making the people, the victims, believe he was entitled to it. So these are the efforts to which he was going to conceal his scheme and that's information the jury was entitled and rightly heard in this case. In addition, this involved him making false statements to law enforcement, which this court has held in Ramirez-Gimenez is intrinsic, inextricably intertwined with a charge scheme. Here, on the day law enforcement was executing the search warrant, he went up to one of the billers who had been involved in the whiting out and the generating the false chart notes and he said to her, don't tell law enforcement about what we were doing with those audits. And this court has held that when someone lies to law enforcement, it shows consciousness of guilt, it shows the effort that they will go to in order to conceal the scheme. And here, he was first providing false information to labor and industries at the time of the audit and then separately, during the execution of a search warrant, telling another employee that you're not supposed to tell law enforcement about this information. So it's similar to those cases where it shows consciousness of guilt, which this court has held, is inextricably intertwined with the crime. And with respect to this, the government believes this evidence came squarely within the balance of what's appropriate under the inexplicably intertwined jurisprudence of this court. But even at best, for the defendant, it's a close case. And close cases are not an abuse of discretion. In a close case, the call goes to the exercise of the discretion of the district judge. And here, Judge Whaley did not take this issue lightly. He issued an order denying the motion for a new trial where he spent 15 pages detailing out the evidence that the government had offered and how it tied in to the other admissible evidence and the charge scheme. So this is not something the district court took lightly and did without thought and concern and an entire extensive, thorough review of the record. And given those facts, Your Honor, the government believes that this was not an abuse of the district court's discretion to admit this evidence is inextricably intertwined. There's three minutes left. Are there other issues the court, there were 13 issues raised in the appeal, and I wanna make sure I hit what the court is interested in hearing. Are there other matters that the court would like to hear about? Yeah, I have no question. Order one. For the foregoing reasons and the reasons set forth in the government's brief, the government requests that the court affirm the district court's pretrial trial and post-trial rulings and affirm the convictions in this matter. Thank you. Good morning again. I'm gonna go through linearly what. One second. Stacy, add two minutes. Oh, thank you. So that you have the time you initially wanted. Thank you. I'll go in the order that counsel did, and if anyone has any questions, please let me know. As to the Rule 28J letter, I did wanna point out on the dearing matter, which is an argument that I've well briefed, and I ask you to refer to the opening brief and reply. But I went and looked at the briefs in that case that was part of the 28J letter, and the dearing matter wasn't argued. It was simply said we were reserving for an in-bank decision. There was no argument whatsoever, which is why it wasn't addressed. They're apparently planning an in-bank motion. And then with regard to Count 41, we go back to how somebody pleads, how the government decides to plead. And if they decide to plead, and I actually, the original Counts 41 through 56, it was that honor about the date of service of January 6, 2006, Curtis Holden knowingly and willfully executed and attempted to execute, that they didn't honor about that day. And if, in fact, that's not the government's theory to prosecute, then this is a faulty indictment and it should have been dismissed as well. In addition, were you looking at the second superseding indictment as the operative indictment? It's the operative indictment, but I was looking at the first superseding because that was the one where the judge didn't dismiss Count 42. And so what's your point about the, how does that apply to the operative indictment here? That they, well, because if Count 42 hadn't survived, then Count 41 couldn't have come forward. That's the argument. So your argument is that the district court erred in saying that Count 42 should survive? Yes, on that one. And then as to Count 41, I think it's significant that no scheme was alleged. It was pled somewhat as a conspiracy count. So initially they had all these very specific things and patience. And then with the Count 41 that gets in the second superseding indictment, there's no actual scheme that's alleged. And trial counsel objected to that on the basis that he was not gonna be able to know what the prosecution was. And they never mentioned, I mean, yes, they did based on documents, but it was a free-for-all in ways that Dr. Lee testified, never testified about a single patient, like remembering this patient or that. On the audit, it's very important that I let you know, and I know I'm running out of time, that my understanding of what the record shows is that the government's speaking about audits that are not the 2006 audit, that Dr. Lee actually testified, and I briefed this, that Dr. Lee testified that the intention on the 2006 audit was to get things right. He was talking about a 2000, I believe he was testifying about a 2003 audit that isn't even within the body of the indictment, because the indictment starts in 2004. As to whether the judge was careful, sure he was. He wasn't told until after trial, so he didn't have the chance to do anything during trial to decide whether this was overbroad, whether he was told this was gonna relate to a count. And so he did his best. I mean, he's a great judge. I love Judge O'Reilly. I'm sorry, but your extended time is up, so thank you for your argument. Thank you. The case of United States v. Holden shall be submitted. We appreciate the excellent arguments of counsel on both sides.
judges: Hawkins, Gould, Ikuta